# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| PATRICK EVANS, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 3:18-cv-00055, Case No.: 3:17-cv-01281, consolidated |
| v. | ) ) | JUDGE WILLIAM L. CAMPBELL |
| OLIVINA NAPA VALLEY, LLC, | ) ) ) | MAGISTRATE JUDGE ALISTAIR NEWBERN |
| Defendant. | ) | |

---

## PLAINTIFF PATRICK EVANS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT AND/OR, IN THE ALTERNATIVE, TO STAY ACTION

---

i

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    FACTUAL BACKGROUND ..................................................................................... 2

III.   LEGAL ARGUMENT ............................................................................................... 3

    A.   Whether a Reasonable Consumer Would be Deceived cannot be Determined at the Pleading Stage. ....................................................................................................... 3

    B.   The Products' Ingredient List does not Cure Defendant's Deception. ........................... 6

    C.   A Reasonable Consumer Would Believe That the Products Contain Exclusively Natural Ingredients. ................................................................................................................ 11

    D.   Plaintiff is Not Required to Conduct a Damages Calculation at the Motion to Dismiss Stage. ....................................................................................................................... 13

    E.   Plaintiff has Adequately Stated Claims for Breach of Express Warranty and Violation of the Magnuson-Moss Warranty Act. ....................................................................... 14

    F.   The Court Should Deny Defendant's Request to Stay the Litigation Pursuant to the Primary Jurisdiction Doctrine. ................................................................................... 17

        1.   The FDA requested comments regarding the use of the term "natural" in human food labeling ...................................................................................................................... 18
        2.   Plaintiff's claims are within the conventional experience of judges. ......................... 20
        3.   There is not a significant danger of inconsistent rulings. .......................................... 22
        4.   The potential delay outweighs the need for the FDA's expertise .............................. 23

IV.   CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, (2d Cir. 1986) ............................................. 19

*Ackerman v. Coca-Cola Co.*, No. cv-09-0395 (JG) (RML) 2010 U.S. Dist. LEXIS 73156, (E.D.N.Y. July 21, 2010) ............................................................ 12

*Ashcroft v. Iqbal*, 556 U.S. 662, (2009). ..................................................................................... 8

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015)............................................. 10

*Astiana v. Hain Celestial Grp., Inc.*, No. 11-cv-6342-PJH, 2015 U.S. Dist. LEXIS 138496 (N.D. Cal. Oct. 9, 2015), ......................................................................... 25

*Atik v. Welch Foods, Inc.*, No. 15-CV-5405, 2016 U.S. Dist. LEXIS 136056, (E.D.N.Y. Sept. 30, 2016).......................................................................... 19

*Bearden v. Honeywell Intern Inc.*, 720 F. Supp.2d 932, (M.D. Tenn. 2010) ............................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007). ....................................................................... 8

*Brady v. Basic Research, L.L.C.,* 101 F. Supp. 3d 217, (E.D.N.Y. 2015).................................... 19

*Briseno v. Conagra Foods, Inc.*, No. CV 11-05379-MMM, 2011 U.S. Dist. LEXIS 154750, (C.D. Cal. Nov. 23, 2011) .............................................................. 14

*Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, (N.D. Cal. 2012)............................. 14

*Colucci v. Zoneperfect Nutrition Co.*, No. C-12-2907 SC, 2012 U.S. Dist. LEXIS 183050, (N.D. Cal. Dec. 28, 2012).......................................................................... 10

*Directv, Inc. v. Treesh*, 487 F.3d 471, (6th Cir. 2007);................................................................ 8

*Dvora v. General Mills*, No. CV 11-1074-GW, 2011 U.S. Dist. LEXIS 55513, (C.D. Cal. May 16, 2011)...................................................................... 13

*Ellis v. Tribune TV Co.*, 443 F.3d 71, (2d Cir. 2006). .................................................................. 22

*Fagan v. Neutrogena Corp.*, Civ. No. 5:13–1316 OP, 2014 U.S. Dist. LEXIS 2795, (C.D. Cal. Jan. 8, 2014) ................................................................ 10

*Far East Conference v. United States*, 342 U.S. 570, (1952) ..................................................... 22

*Fayne v. Vincent*, 301 S.W.3d 162, (Tenn. 2009)........................................................................ 9

*Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, (S.D. Fla. 2014) ...................................................... 26

*Gedalia v. Whole Foods Market Srvcs, Inc.*, 53 F. Supp.3d 943, (S.D. Tex. 2014)..................... 15

*Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, (S.D.N.Y. 2014); .......... 9

*Goya Foods, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848, (2d Cir. 1988).............................. 25

*Guevara v. UMH Props.*, No. 2:11-cv-2339-SHL, 2014 U.S. Dist. LEXIS 154394, (W.D. Tenn. Oct. 29, 2014)........................................................................ 9

*Hairston v. South Beach Bev. Co.*, No. CV 12-1429-JFW, 2012 U.S. Dist. LEXIS 74279, (C.D. Cal. May 18, 2012 ............................................................... 15

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, (S.D.N.Y. 2015);..... 9

*In re Frito-Lay N. Am., Inc.*, No. 12-MD-2413-RRM-RLM, 2013 U.S. Dist. LEXIS 123824, (E.D.N.Y. Aug. 29, 2013) ........................................................... 10

*In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, (E.D. Tenn. 2014) ...................... 8

*Inge v. Rock Fin. Corp.*, 281 F.3d 613, (6th Cir. 2002).............................................................. 8

*Jessani v. Monini N. Am., Inc.*, No. 17-cv-03257, Dkt. 18 (S.D.N.Y. Aug. 3, 2017)................... 13

*Jones v. MFW-Wo, Inc.*, 265 F.Supp.3d 775 (M.D. Tenn. 2017). ............................................... 19

*Jou v. Kimberly-Clark Corp.*, No. C-13-03075-JSC, 2013 U.S. Dist. LEXIS 173216, (N.D. Cal. Dec. 10, 2013) .......................................................................................................... 15

*Luib v. Henkel Consumer Goods, Inc.*, No. 17-cv-0302-BMC, 2018 U.S. Dist. LEXIS 18598 (S.D.N.Y. Feb. 5, 2018) ........................................................................................... 10

*Mackey v. Judy's Foods, Inc.*, 654 F. Supp. 1465, (M.D. Tenn. 1987) .......................................... 9

*McKinnis v. General Mills*, No. CV 07-2521-GAF, 2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007), .................................................................................................... 15

*Morales v. Kraft Foods Group, Inc.*, No. 2:14-cv-04387-JAK-PJW (C.D. Cal. Dec. 6, 2016) ... 28

*Morales v. Unilever U.S., Inc.*, No. 2:13-2213, 2014 U.S. Dist. LEXIS 49336, (E.D. Cal. Apr. 9, 2014) ............................................................................................................................ 10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, (1995). ............................................................................................................................ 9

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, (2d Cir. 2005). ............................ 18

*Petrosino v. Stearn's Products, Inc.*, No. 7:16-cv-007735-NSR, 2018 U.S. Dist. LEXIS 55818, (S.D.N.Y. March 30, 2018) .......................................................................................... 9

*Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, (S.D.N.Y. 2013) .................................................. 9

*Rehberger v. Honeywell Int'l, Inc.*, No. 3:11-0085, 2011 U.S. Dist. LEXIS 19616, (M.D. Tenn. Feb 28, 2011) ............................................................................................................... 20

*Riggs Drug Co. v. Amerisourcebergen Drug Corp.*, No.: 3:09-CV-538, 2010 U.S. Dist. LEXIS 95310, (E.D. Tenn. Sept. 13, 2010) ............................................................................. 9

*Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 RML, 2015 U.S. Dist. LEXIS 122186, (E.D.N.Y. Sept. 14, 2015) ............................................................................................ 9

*Sitt v. Nature's Bounty,* Inc, No. 15-CV-4199-MKB, 2016 U.S. Dist. LEXIS 131564, (E.D.N.Y. Sep. 26, 2016) ............................................................................................................. 16

*Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335-MCE-JFM, 2009 U.S. Dist. LEXIS 43127, (E.D. Cal. 2009), ............................................................................................................. 14, 15

*United States v. Western Pacific. R. Co.*, 352 U.S. 59, (1956)). ................................................ 22

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, (S.D.N.Y. 2015). .................................. 21

*Williams v. Gerber Prods. Co.,* 552 F.3d 934, (9th Cir. 2008) .................................................. 12

## STATUTES

15 U.S.C. § 2310(d)(3). .............................................................................................................. 21

New York GBL § 349 ................................................................................................................... 8

New York GBL § 350 ................................................................................................................... 8

Tenn. Code Ann. § 47-18-101 ..................................................................................................... 7

## OTHER AUTHORITIES

Class Action Fairness Act ........................................................................................................... 21

Magnusson-Moss Warranty Act .................................................................................................. 8

Tennessee Consumer Protection Act ........................................................................................... 7

https://www.politico.com/story/2017/01/trump-executive-order-federal-regulations-crackdown-234382 ......................................................................................................................................... 24

iv

## I. INTRODUCTION

This class action seeks a remedy for Olivina's deceptive and misleading business practices with respect to the marketing sale of certain products labeled as "Naturally Pure." Plaintiff alleges that Defendant's natural claim is deceptive and misleading to reasonable consumers given that the Products contain synthetic ingredients. In response to Plaintiff's allegations, Defendant does not contest that Products contain synthetic ingredients. Rather, Defendant asks this Court to supplant the reasonable consumer's perspective with Defendant's own self-interested opinion, and to find as a matter of law that no reasonable consumer could have been misled by the Defendant's "natural" claims. However, it is well-settled in this Circuit and across the country that how a reasonable consumer would interpret a label is not appropriate for determination on a motion to dismiss. The Products' labels do not indicate in any way that many of their ingredients are synthetic, nor do they attempt to distinguish the natural ingredients from the synthetic ones. Furthermore, there is nothing on the label to suggest that the term "Naturally Pure" refers to anything other than the Products' ingredients.

Defendant's alternative argument, that the case should be stayed and deferred to the primary jurisdiction of the FDA, should also be rejected. First, contrary to Defendant's arguments, the FDA's consideration of the use of the term "natural" is limited to food products. Since this case involves personal care products, it does not warrant application of the primary jurisdiction doctrine. Indeed, the FDA has affirmatively indicated that it is not considering the use of the term "natural" outside the food industry, and it is unlikely to do so. Second, this Court is well suited to determine whether the Defendant's use of the term "natural" on the Products' labels is misleading to a reasonable consumer. Lastly, even if the FDA's determination with respect to food has any applicability in this case, given the lengthy rulemaking process and the

1

recent administration changes there will likely be even further delay of any possible guidance on the use of the term "natural" in food labeling. Therefore, Defendant's motion should be denied in its entirety.

## II.     FACTUAL BACKGROUND

This class action centers on Defendant Olivina Napa Valley, LLC ("Olivina" or "Defendant") deceptive and misleading natural claims with respect to the marketing and sale of three products in Defendant's "Olivina Men" product line: (1) Olivina Men All-In-One Body Wash Bourbon Cedar; (2) Olivina Men Rinse Out/Leave In Conditioning Cream; and (3) Olivina Men Bourbon Cedar Aluminum Free Deodorant (the "Products"). (Dkt. No. 1, Class Action Compl. (hereinafter "Compl.") ¶ 1.) More specifically, Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers, i.e., that its Products are "Naturally Pure." (*Id.* ¶ 2.) The "Naturally Pure" representation is emblazoned front and center in capital letters on each of the Products.

A reasonable consumer viewing the Products' labeling would interpret it to mean that the Products do not contain synthetic ingredients. (Compl. ¶¶ 13-15.) In reality, however, Defendant's Products contain a litany of synthetic ingredients, including propanediol, sodium chloride, cetyl alcohol, cetearyl alcohol, panthenol, tocopherol, citric acid, potassium sorbate, sodium benzoate, decyl glucoside, and cocamidopropyl betaine. (*Id.* at ¶ 6.)

Plaintiff purchased the Products in New York because he viewed the "Naturally Pure" label and reasonably believed the Products did not contain non-natural, synthetic ingredients. (Compl. ¶ 31.) Had he known the truth—that the representations he relied upon in purchasing the products were false, misleading, and deceptive—he would not have purchased the Products

2

or would not have paid as much as he did for them.  (*Id.* at ¶ 32.)  As a result of Defendant's misrepresentations, the Products Plaintiff and the class members actually received were worth less than the Products for which they paid.  (*Id.*)

Based on Defendant's false and misleading representations on the packaging of each of the Products, Plaintiff has brought this class action on behalf of himself and those similarly situated alleging the following claims: (1) violation of Tennessee Consumer Protection Act, Tenn. Code. Ann. § 47-18-101;[1] (2) breach of express warranty under Tennessee law; (3) breach of implied warranty under Tennessee law;[2] (4) violation of the violation of New York GBL § 349; (5) violation of New York GBL § 350; (6) violation of state consumer protection statutes; (7) breach of express warranty; (8) violation of the Magnusson-Moss Warranty Act; and (9) breach of implied warranty of merchantability.

## III.    LEGAL ARGUMENT

### A.  Whether a Reasonable Consumer Would be Deceived cannot be Determined at the Pleading Stage.

In deciding a motion to dismiss under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that

---

[1] Plaintiff concedes he cannot bring a claim on behalf of the national class under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*; however, Defendant has not provided any basis to dismiss his individual claims.  Therefore, the Court should not dismiss his individual claim under the Tennessee Consumer Protection Act.

[2] Plaintiff hereby agrees to dismiss his claim of breach of implied warranty (Third Cause of Action).

3

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant seeks to dismiss Plaintiff's consumer protection claims under New York GBL §§ 349 and 350 and the Tennessee Consumer Protection Act ("TCPA"). It is unclear which state's law Defendant believes will apply to Plaintiff's claims. However, under the choice of law principles of Tennessee, it is likely that New York law will apply. *See In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 585 (E.D. Tenn. 2014) (noting that Tennessee applies the "most significant relationship" test to choice-of-law issues, which includes determining where the injury occurred, where the conduct that caused the injury occurred, and where the parties are domiciled); *Mackey v. Judy's Foods, Inc.*, 654 F. Supp. 1465, 1468 (M.D. Tenn. 1987) (applying Alabama law to plaintiff's claims under Tennessee choice-of-law principles because plaintiff was injured in Alabama).[3]

Under New York law, Plaintiff alleges Defendant's "Naturally Pure" labeling is materially misleading. Whether acts or practices are materially deceptive or misleading is judged by "a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). The reasonable consumer's view of a product labeling issue is generally a question of fact, which is not appropriate for determination on a motion to dismiss. *Hidalgo v. Johnson & Johnson*

---

[3] However, even if Tennessee law were to apply, Plaintiff has adequately stated an individual claim under the TCPA because, as demonstrated below, a reasonable consumer would be deceived by Defendant's misrepresentations. *Guevara v. UMH Props.*, No. 2:11-cv-2339-SHL, 2014 U.S. Dist. LEXIS 154394, *17 (W.D. Tenn. Oct. 29, 2014) ("an act is 'deceptive' [under the TCPA] if it involves a 'material representation, practice or omission likely to mislead a reasonable consumer.'") (quoting *Davis v. McGuigan*, 325 S.W.3d 149, 162 (Tenn. 2010); *Riggs Drug Co. v. Amerisourcebergen Drug Corp.*, No.: 3:09-CV-538, 2010 U.S. Dist. LEXIS 95310, *16 (E.D. Tenn. Sept. 13, 2010) (holding that what a reasonable consumer would believe is not for a court to determine at the motion to dismiss stage); *Fayne v. Vincent*, 301 S.W.3d 162, 170 (Tenn. 2009) ("Whether a particular act is unfair or deceptive is a question of fact.").

4

*Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive is usually a question of fact."); *Petrosino v. Stearn's Products, Inc.*, No. 7:16-cv-007735-NSR, 2018 U.S. Dist. LEXIS 55818, *11 (S.D.N.Y. March 30, 2018) ("The question of whether Defendant's label is actually misleading to a reasonable consumer as a matter of law, is a question of fact better suited for the jury."); *Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 RML, 2015 U.S. Dist. LEXIS 122186, at *24 (E.D.N.Y. Sept. 14, 2015) (rejecting defendant's argument that, as a matter of law, no reasonable consumer could be misled by the representation "Natural Brew"); *In re Frito-Lay N. Am., Inc.*, No. 12-MD-2413-RRM-RLM, 2013 U.S. Dist. LEXIS 123824, at * 29 (E.D.N.Y. Aug. 29, 2013) (holding that "what a reasonable consumer would believe the term 'natural' to mean cannot be resolved on [a] motion [to dismiss]," as it is a "factual dispute").

Indeed, in cases with claims similar to those asserted in Plaintiff's Complaint where allegations centered on a false or misleading "natural" claim, courts around the country have repeatedly denied motions to dismiss. *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) (reversing a district court decision to dismiss a consumer fraud action against a manufacturer for its personal care products that claimed to be "all natural" or "pure natural"); *Morales v. Unilever U.S., Inc.*, No. 2:13-2213, 2014 U.S. Dist. LEXIS 49336, at *24 (E.D. Cal. Apr. 9, 2014) (denying motion to dismiss claims involving shampoos and conditioners labeled "naturals"); *Fagan v. Neutrogena Corp.*, Civ. No. 5:13–1316 OP, 2014 U.S. Dist. LEXIS 2795, at *6 (C.D. Cal. Jan. 8, 2014) (denying motion to dismiss when defendant claimed its sunscreen was "100% naturally sourced"); *Colucci v. Zoneperfect Nutrition Co.*, No. C-12-2907 SC, 2012

U.S. Dist. LEXIS 183050, at *27 (N.D. Cal. Dec. 28, 2012) (denying motion to dismiss challenge to "all natural" claim on nutrition bars).

Indeed, a court in the Southern District of New York recently held that the issue could not even be decided at the summary judgment stage. *Luib v. Henkel Consumer Goods, Inc.*, No. 17-cv-0302-BMC, 2018 U.S. Dist. LEXIS 18598 (S.D.N.Y. Feb. 5, 2018) ("[w]hether or not the 'Natural Elements' label is materially misleading turns on whether a factfinder determines that a reasonable person would be misled by this label into thinking that the Products contain no synthetic elements . . . I cannot say that it would unreasonable as a matter of law for a factfinder to come out one way or the other on this issue, and thus the inquiry is a factual one."). In short, whether or not Defendant's "Naturally Pure" representation is deceptive is a fact-sensitive question that cannot be determined at the motion to dismiss stage.

Defendant attempts to circumvent this well-settled principle by advancing three equally baseless arguments. First, Defendant contends that the "natural" representations cannot be deceptive, as a matter of law, because the Products' ingredients are printed on the back. (Dkt. No. 28, Def. Mem. Support Motion to Dismiss (hereinafter "Br.") 14-17.) Second, Defendant argues that a reasonable consumer could not believe that all of the Products' ingredients were natural because the labels do not say "100% natural" or "all natural." (*Id.* at 18.) Third, Defendant suggests that the Complaint is somehow deficient because Plaintiff "does not actually allege what 'premium' price Plaintiff actually paid to purchase the Product(s) or identify where or when the Product was sold at that 'premium' price. (*Id.* at 20.) Each of these arguments is unsupported by relevant caselaw and contrary to well-established "natural" labeling jurisprudence, as discussed herein.

**B. The Products' Ingredient List does not Cure Defendant's Deception.**

6

Defendant argues that a reasonable consumer could not be misled by the Products' labels, which announce in large lettering on the front of the Products that they are "Naturally Pure," because the full ingredient list is disclosed on the back of the Product labels. (Br. 18.) Courts have consistently rejected this argument. *See, e.g.*, *Goldemberg*, 8 F. Supp. at 479 (holding that where defendant's trademark and advertising "exclusively tout[ed]" the natural ingredients in its "Active Naturals" personal care products, the disclosure of synthetic ingredients on the products' back label did not, as a matter of law, preclude a reasonable consumer from being misled). Consumers are not expected to look beyond misleading labeling in search of the true meaning of a defendant's representations. *Ackerman v. Coca-Cola Co.*, No. cv-09-0395 (JG) (RML) 2010 U.S. Dist. LEXIS 73156, at * 62 (E.D.N.Y. July 21, 2010) ("Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.") (Internal citations and quotations omitted); *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 939-40 (9th Cir. 2008) (holding ingredient identification on FDA-mandated panel did not bar claim that reasonable consumers could be misled by label to believe "Fruit Juice Snacks" actually contained juice from fruits pictured).

Defendant contends that "a reasonable consumer would understand, after merely reading the label and ingredient list, that Olivina's Products may contain some synthetic ingredients." (Br. 18.) In making this argument, Defendant omits the fact that Defendant's labels do not explain that many of the ingredients in the Products are synthetic, or attempt to distinguish the natural ingredients from the synthetic ones. Thus, even if a consumer were to scour the Products' labels for the ingredient list, they would still be deceived. *See Goldemberg*, 8 F. Supp. at 479 (holding that even an ingredient list which affirmatively identifies which ingredients are

7

natural does not dictate that a reasonable consumer could not be deceived by a "natural" representation into believing that all of the ingredients are natural). Discovering which ingredients are not natural and are actually synthetic would require a scientific investigation and knowledge of chemistry beyond that of a reasonable consumer. (Compl. ¶ 13.) Thus, even if consumers were to do "sufficient reading" (Br. 18) they would still reasonably believe that the Products' ingredients were entirely natural based on Defendant's front-of-the-packaging "Naturally Pure" representation.

Defendant's argument that Plaintiff would have been able to determine which ingredients were natural and which were synthetic by reading the ingredient list simply because Plaintiff's counsel was able to do so is incorrect. (Br. 20.) Defendant cannot impute Plaintiff's counsels' experience and research in the realm of natural and synthetic personal care products to Plaintiff, or to the reasonable consumer. How or when Plaintiff was able to determine that the Products contain synthetic ingredients is irrelevant to whether he was reasonably deceived when he purchased the Products.

The cases cited by Defendant do not support its argument. First, many of the cases cited by Defendant are "flavoring" claims which involved interpretations of product labeling that were so fanciful on their face that they warranted dismissal. Second, many of the cases involved product labeling which contained explicit clarifying language that was part of the challenged representation. No court has ever held that an ingredients list alone constitutes sufficient clarifying language to correct an otherwise misleading statement on the front of the product. Contrary to Defendant's arguments, none of these cases stand for the proposition that reasonable consumers must ignore the representations on the front of a product and must take it upon themselves to read the ingredient list and understand which of the listed ingredients are natural

and which are synthetic.

Defendant's "flavoring claims" cases involve fake fruit in sugar cereals, not "natural" labeling claims. *McKinnis v. General Mills*, No. CV 07-2521-GAF, 2007 U.S. Dist. LEXIS 96107, at *13 (C.D. Cal. Sept. 18, 2007) (claim regarding a "natural fruit flavors" representation); *Dvora v. General Mills*, No. CV 11-1074-GW, 2011 U.S. Dist. LEXIS 55513, at *19 (C.D. Cal. May 16, 2011) (claim involving a "Total Blueberry Pomegranate Cereal" which did not contain real fruit); *Jessani v. Monini N. Am., Inc.*, No. 17-cv-03257, Dkt. 18 (S.D.N.Y. Aug. 3, 2017) (claim challenging "White Truffle Flavored" olive oil which did not contain real truffles); *Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335-MCE-JFM, 2009 U.S. Dist. LEXIS 43127, *8 (E.D. Cal. 2009), (challenge to the use of the term "crunchberries" on a cereal which did not contain real berries). These claims were dismissed because they involved claims that "border on fantasy." *In re Frito-Lay N. Am., Inc.*, No. 12-MD-2413-RRM-RLM, 2013 U.S. Dist. LEXIS 123824, at *51 (E.D.N.Y. Aug. 29, 2013) (discussing *Sugawara*). As such, they have no bearing on the "natural" claims in this case, which adequately plead that a reasonable consumer would be misled by Defendant's representations. *See Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 899 (N.D. Cal. 2012) (specifically distinguishing *McKinnis* and *Sugawara* because "[r]epresentations about fake fruit in the sugar cereal cases or the phrase 'sugar in the raw' are very different than [organic representations]); *In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at * 51 ("In marked contrast [to *Sugawara*], a reasonable consumer viewing the Tostitos, SunChips, and Bean Dip 'All Natural' labels could reach a variety of conclusions about their potential for containing genetically modified ingredients.); *Briseno v. Conagra Foods, Inc.*, No. CV 11-05379-MMM, 2011 U.S. Dist. LEXIS 154750, *42 (C.D. Cal. Nov. 23, 2011) (holding that plaintiff's "natural" labeling "allegations cannot readily be analogized to cases

involving consumers who were purportedly misled by the use of names such as 'Cap'n Crunch with Crunchberries' and 'Froot Loops' into concluding that the cereals contained real fruit."). Defendant's reliance on *Dvora* is particularly misplaced because the court itself distinguished the case from *Williams* and other cases involving "natural" representations. *Dvora*, 2011 U.S. Dist. LEXIS 55513, at *19 ("Here, the Plaintiff's claims rest not on alleged characterizations of the product as being 'natural' or its health benefits, but rather on the contents (or lack of certain contents, i.e. blueberries and pomegranates) of the product.").

Next, the cases cited by Defendant with "clarifying language" were dismissed because the language was actually part of the alleged misrepresentation. In *Hairston v. South Beach Bev. Co.*, No. CV 12-1429-JFW, 2012 U.S. Dist. LEXIS 74279, *13 (C.D. Cal. May 18, 2012), the court concluded that defendant's "all natural" labeling was not deceptive because the "all natural language" was immediately followed by the addition statements "with vitamins" or "with B vitamins." In *Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335-MCE-JFM, 2009 U.S. Dist. LEXIS 43127, *8 (E.D. Cal. 2009), the court held that a reasonable consumer could not believe that the cereal at issue contained real berries because the term "berries" was only used on the labeling in conjunction with the word "crunch," and because the label clearly stated both that the product contained "sweetened corn & oat cereal" and that the cereal is "enlarged to show texture." In *McKinnis v. General Mills*, No. CV 07-2521-GAF, 2007 U.S. Dist. LEXIS 96107 *13 (C.D. Cal. Sept. 18, 2007), the court dismissed plaintiff's claim that a "natural fruit flavors" representation was deceptive because the product label itself disclosed that the product only tasted like berries.

In each of these cases the alleged misrepresentations themselves contained clarifying language which made it clear that the products did not contain real fruit, berries, or natural ingredients. In contrast, as pictured in the Complaint, the Olivina Products' labels at issue

contain no such clarifying language. Defendant can only point to the ingredient list, which, as discussed above, fails to inform to inform consumers that the Products contain both natural and synthetic ingredients, or to distinguish which ingredients are natural and which are not. Consequently, this case does not fit within the line of cases which hold that "context" or "clarifying language" can prevent a reasonable consumer from being misled by a label representation. *See Jou v. Kimberly-Clark Corp.*, No. C-13-03075-JSC, 2013 U.S. Dist. LEXIS 173216, at *36 (N.D. Cal. Dec. 10, 2013) (distinguishing *Hairston* from a case involving a "pure and natural" label representation); *Gedalia v. Whole Foods Market Srvcs, Inc.*, 53 F. Supp.3d 943, 950 (S.D. Tex. 2014) ("Whether a reasonable consumer would find a representation misleading is generally a fact question. Dismissal is only appropriate in 'rare' situations, as when 'the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'") (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).

Accordingly, the Court should reject Defendant's attempt to apply these cases to this natural labeling case, and should deny defendant's motion.

### C. A Reasonable Consumer Would Believe That the Products Contain Exclusively Natural Ingredients.

Defendant argues that its "natural" labeling cannot, *as a matter of law*, deceive a reasonable consumer into believing that the Products contain *exclusively* natural ingredients because it does not claim that the Products are "All Natural" or "100% Natural." (Br. 19.) This argument, however, is contrary to the overwhelming caselaw regarding GBL §§ 349 and 350, which holds that reasonable consumers may interpret the term "natural" to mean that all of the ingredients in a product are natural. *See Sitt v. Nature's Bounty,* Inc, No. 15-CV-4199-MKB, 2016 U.S. Dist. LEXIS 131564, at *43-44 (E.D.N.Y. Sep. 26, 2016) (holding that "although

11

Defendants are correct that [their] representations do not promise that the Product is "all" or "100%" natural, a reasonable consumer could assume that the Product contains only natural ingredients . . . The fact that the fine print on the back of the labeling could indicate to a consumer that other ingredients were not "natural" does not render another conclusion so patently or objectively unreasonable so as to warrant dismissal as a matter of law based on the reasonable consumer prong."); *Goldemberg*, 8 F. Supp. 3d at 479 (rejecting motion and holding that a reasonable consumer could interpreted "Active Naturals" to mean that the product was completely natural); *Petrosino*, 2018 U.S. Dist. LEXIS 55818, at *11 ("[i]t is not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients.") (quoting *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, *29 (May 7, 2015)); *Silva*, 2015 U.S. Dist. LEXIS 122186, at *24 (rejecting rejected defendant's argument that, as a matter of law, no reasonable consumer could be similarly misled by the term "natural" into thinking that the products were exclusively natural.").

Defendant cites to *Williams v. Gerber*, 552 F.3d 934 (9th Cir. 2008), in an attempt to distinguish that case by limiting it to "100% Natural" or "All Natural" representations. (Br. 19, n.5.) However, the *Williams* Court held that "the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false" and that disclosure of the ingredients on the FDA mandated ingredient list did not preclude a reasonable consumer from being deceived. *Williams*, 553 F.3d at 939. Moreover, the line of cases following *Williams* is not limited to "100% natural" or "All Natural Claims." In those cases, the courts refused to dismiss representations like those issue here. *See, e.g.*, *Goldemberg*, 8 F. Supp.

12

3d at 479 ("Active Naturals"); *Silva*, 2015 U.S. Dist. LEXIS 122186, at \*24 ("natural"); *Morales*, 2014 U.S. Dist. LEXIS 49336, at \*22-23 ("naturals").

Finally, without authority, Defendant argues that consumers assume that products like Defendant's probably contain synthetic or artificial ingredients unless there is express language to the contrary. (Br. 20.) As the cases above demonstrate, however, "Naturally Pure" is just the type of express language which indicates to a reasonable consumer that the Products' ingredients are natural. This is yet another attempt by Defendant to substitute its own judgment for that of a reasonable consumer, and it should be rejected by the Court.

### D. Plaintiff is Not Required to Conduct a Damages Calculation at the Motion to Dismiss Stage.

Defendant next advances the argument that the Complaint is somehow insufficient because while it alleges that Plaintiff paid a premium price for the Products based on the representation that they were "Naturally Pure," it does not allege specifically what the premium price is or identify where or when the Products were sold at a premium price. (Br. 20.) As with Defendant's other arguments, this contention has been soundly rejected by other courts analyzing GBL §§ 349 and 350 claims. *Goldemberg*, 8 F. Supp. 3d at 481 (rejecting the argument that alleging plaintiff paid a premium price, without making any other factual allegations, is insufficient to properly allege the injury element under §§ 349 and 350); *see also Ackerman*, 2010 U.S. Dist. LEXIS 73156, at \*73 ("Injury is adequately alleged under GBL [§] 349 . . . by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.") (citations omitted). Nor is Plaintiff required to plead any further detail regarding the actual premium price that was paid, or when or where the premium was charged because the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil

Procedure do not apply to GBL § 349 claims. *Goldemberg*, 8 F. Supp. 3d at 481; *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

### E.  Plaintiff has Adequately Stated Claims for Breach of Express Warranty and Violation of the Magnuson-Moss Warranty Act.[4]

Defendant contends that Plaintiff has not adequately pled an express warranty claim because the Product labels do not affirmatively state that the products are "All Natural" or "100% Natural."  (Br. 21.)  However, to prevail on a breach of express warranty claim under New York and Tennessee law, a plaintiff simply must show "an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon."  *Atik v. Welch Foods, Inc.*, No. 15-CV-5405, 2016 U.S. Dist. LEXIS 136056, at *23 (E.D.N.Y. Sept. 30, 2016) (quoting *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 Fed. Appx. 110, 111-12 (2d Cir. 2010)); *Jones v. MFW-Wo, Inc.*, 265 F.Supp.3d 775 (M.D. Tenn. 2017).

Plaintiff alleges the "Naturally Pure" representation on the Products constituted a description of the Products that was part of the basis of the bargain and that the warranty was breached by the inclusion of non-natural synthetics in the Products.  This constitutes an express warranty under both Tennessee and New York law.  *See, e.g.*, *Sitt*, 2016 U.S. Dist. LEXIS 131564, at *56.  Defendant's contention is simply a reiteration of its earlier argument that a reasonable consumer could not be deceived into believing that the Products' ingredients were exclusively natural.  For the reasons set forth above in Section III.C., this argument should be rejected.  *Goldemberg*, 8 F. Supp. 3d at 483 ("as the Court is unable to determine as a matter of

---

[4] Defendant argues that Plaintiff's unjust enrichment claim should be dismissed; however, Plaintiff did bring an unjust enrichment claim.

law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for the warranty claim.").

Because Plaintiff properly asserts a claim for breach of express warranty, he has also stated a claim under the Magnuson-Moss Warranty Act ("MMWA"). Although the MMWA provides a federal class action remedy for express and implied breach of warranty claims, it "merely incorporates and federalizes state-law breach of warranty claims." *Brady v. Basic Research, L.L.C.,* 101 F. Supp. 3d 217, 234 (E.D.N.Y. 2015) (citations and quotations marks omitted). "[C]laims under the Magnuson-Moss Act stand or fall with [plaintiffs'] express and implied warranty claims under state law. Therefore, th[e] disposition of [] state law warranty claims determines the disposition of the Magnuson-Moss Act claims." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) (holding that state law governs implied warranty claims under the MMWA); *see also Sitt*, 2016 U.S. Dist. LEXIS 131564, at *57 (denying motion to dismiss MMWA claim where plaintiff stated an express warranty claim); *Brady*, 101 F. Supp. 3d. at 235 (same).

Additionally, Plaintiff's claim under the MMWA cannot be dismissed for lack of proper notice to the Defendant. The Complaint states that "[w]ithin a reasonable time after he knew or should have known of Defendant's breach, Plaintiff, on behalf of himself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do." (Compl. ¶ 123.) As Defendant acknowledges (Br. 22), before filing this suit, Plaintiff mailed a pre-suit letter to Defendant. Attached to that letter was a draft complaint which asserted a cause of action for, *inter alia*, violation of the MMWA and identified each of the Products to which that claim applied. Moreover, both the letter and the draft complaint asserted causes of action on behalf of a nationwide class. The cases cited by Defendant

dismissed Plaintiff's MMWA claims because plaintiff did not explicitly notify the Defendant beforef filing suit that he or she was acting on behalf of a class. *Bearden v. Honeywell Intern Inc.*, 720 F. Supp.2d 932, 937 (M.D. Tenn. 2010) ("[plaintiff] never explicitly told Honeywell that she was "acting on behalf of the class"); *Rehberger v. Honeywell Int'l, Inc.*, No. 3:11-0085, 2011 U.S. Dist. LEXIS 19616, at *35 (M.D. Tenn. Feb 28, 2011) ("the plaintiff has not alleged that he notified the defendant that he planned to bring a class-action MMWA claim. Instead, the Complaint alleges that, because Honeywell had already been sued by similar plaintiffs, the defendant had 'actual notice of both claims by purchasers and claims on behalf of the class of purchasers."). Here, by contrast, Defendant was notified both of Plaintiff's MMWA claims and the fact that Plaintiff was representing a nationwide class.

Next, Defendant argues that the MMWA claims must be dismissed because Plaintiff has not alleged the products cost more than $25 as required by 15 U.S.C. § 2310(d)(3). (Br. 22.) However, the Class Action Fairness Act, as pleaded in the Complaint (Compl. ¶ 28), provides an independent basis for jurisdiction. "Consistent with every Court of Appeals to address the issue and the vast majority of district courts . . . where the jurisdictional prerequisites of CAFA are satisfied, [a court] may exercise subject-matter jurisdiction over a claim under the MMWA without regard for whether the jurisdictional prerequisites of that statute are also met." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015). Accordingly, the $25 requirement is not a barrier to jurisdiction. The reasons most courts have found that CAFA represents a separate basis for jurisdiction are based on the breadth of the statute. *Id.* at 293 ("[A]s several courts have pointed out . . . CAFA's grant of jurisdiction over qualifying class actions is quite broad."). Accordingly, "there is no basis to read an MMWA exception into

CAFA that Congress itself chose not to include."  As such, Plaintiff's MMWA claim should not be dismissed.

### F.  The Court Should Deny Defendant's Request to Stay the Litigation Pursuant to the Primary Jurisdiction Doctrine.

Defendant argues the Court should issue a stay under the primary jurisdiction doctrine. The primary jurisdiction doctrine is applied under the following circumstances:

> In cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. . . . Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Far East Conference v. United States*, 342 U.S. 570, 574-75 (1952) (emphasis added).  There is "no fixed formula [] for applying the doctrine."  *United States v. Western Pacific. R. Co.*, 352 U.S. 59, 64 (1956)). Rather, the question is "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.  *Id.*  Courts generally consider the following factors in determining whether to apply the primary jurisdiction doctrine:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Ellis v. Tribune TV Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006).

**1. The FDA requested comments regarding the use of the term "natural" in human food labeling.**

Defendant states that "the FDA has already initiated proceedings to offer guidance on whether certain products may be labeled as "Natural," "All Natural," and/or "100% Natural." (Br. 26.) However, this is not the first time the FDA has considered defining "natural." In 1991, the FDA considered establishing a definition for the term "natural" in the context of food labeling. *See* 56 FR 60421, Nov. 27, 1991. After declining to define the term, the FDA stated it would continue its policy to interpret the term "natural" as "nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 FR 2302 at 2407.

Over two years ago, on November 12, 2015, the FDA issued a notification of request for comments, which provided:

> The Food and Drug Administration (FDA or we) is announcing the establishment of a docket to receive information and comments on the use of the term "natural" in the labeling of human food products, including foods that are genetically engineered or contain ingredients produced through the use of genetic engineering. We are taking this action in part because we received three citizen petitions asking that we define the term "natural" for use in food labeling and one citizen petition asking that we prohibit the term "natural" on food labels. We also note that some Federal courts, as a result of litigation between private parties, have requested administrative determinations from FDA regarding whether food products containing ingredients produced using genetic engineering or foods containing high fructose corn syrup may be labeled as "natural." We are working with the United States Department of Agriculture (USDA) Agricultural Marketing Service and Food Safety and Inspection Service to also examine the use of the term "natural" in meat, poultry, and egg products, and are considering areas for coordination between FDA and USDA. We invite public comment on the term "natural" in the context of food labeling and on specific questions contained in this document.

80 FR 69905. The fact that FDA accepted comments on the use of the term "natural" in food labeling does not mean it will in fact define the term. And, even if it does, the request specifically relates to human food products and does not encompass cosmetic products.

18

Defendant argues that a New York Times article is "a clear indication that such pending guidance would also apply to personal care and cosmetic products" because the FDA commissioner made a statement "as part of a story on the proliferation of 'natural' cosmetics litigation." (Br. 26.) However, contrary to Defendant's representation, the article addressed the "market for packaged foods, beverages and consumer products" promoted as "natural." (Br. Ex. A.) The first portion of the article discusses trends in food litigation. (*Id.*) The article states that "[a] survey of consumers in 2015 by Consumer Reports magazine showed that at least 60 percent of respondents believed 'natural' on packaged and processed foods meant they contained no artificial colors or ingredients and no genetically modified materials." (*Id.*) It then states that "[i]n late 2015, the United States Food and Drug Administration sought feedback from consumers and the industry on whether it should define and regulate the word 'natural' on food labeling," and quotes the FDA commissioner. (*Id.*) Notably, the article continues: "Apart from food, the regulation of claims in the advertising of shampoos and laundry detergent gets even murkier." (*Id.*) The article very clearly distinguishes its discussion regarding food labeling from its discussion regarding cosmetic and personal care product labeling. The commissioner's comments address food labeling, not cosmetic and personal care labeling.

Moreover, recent courts have declined to issue stays in natural cosmetic litigation pending the FDA's definition of "natural" with respect to human food products. *See, e.g.*, *Petrosino*, 2018 U.S. Dist. LEXIS 55818. In *Petrosino*, the court held: "the FDA's definition of 'natural' with regards to human food products would not be particularly helpful. As instructive as that definition may be, it ultimately involves a significantly different subject matter, namely, food products instead of cosmetics." *Id.* at *30.

Additionally, the FDA has explicitly and affirmatively declined to make a determination regarding the term "natural" in cosmetic or personal care labeling, and thus a stay would be unwarranted and inappropriate. *Astiana v. Hain Celestial Grp., Inc.*, No. 11-cv-6342-PJH, 2015 U.S. Dist. LEXIS 138496 (N.D. Cal. Oct. 9, 2015), is instructive.[5] There, after the Ninth Circuit ruled that the district court erred by dismissing the case (involving cosmetic labeling) under the primary jurisdiction doctrine, the Ninth Circuit remanded the case and asked the district court to consider "whether events during the pendency of the appeal changed the calculus on whether further FDA proceedings are necessary." Thereafter, the district court ruled that a letter by the FDA explicitly shows that the "agency is aware of but has expressed no interest in the subject matter of the litigation" (i.e., "natural" within the context of cosmetic labeling). Accordingly, there is no basis for a stay.

### 2. Plaintiff's claims are within the conventional experience of judges.

Contrary to Defendant's argument, resolution of the issues in this case do not require the FDA's expertise. (*See* Br. 26.) The primary jurisdiction doctrine does not apply when "the issue at stake is legal in nature and lies within the traditional realm of judicial competence" as it is here. *Goya Foods, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848, 851 (2d Cir. 1988) (collecting

---

[5] Interestingly, Defendant cites *Astiana* in support of its motion. Although true the Ninth Circuit held that "**[o]n the record before it**, the district court did not err in invoking primary jurisdiction," the district court made the decision in 2012, before the FDA issued its invitation for comments. Moreover, the Ninth Circuit remanded with instructions to consider "whether the events during the pendency of this appeal . . . affect the need for further proceedings at the FDA or demonstrate that another referral to the agency would be futile." *Astiana*, 783 F.3d at 762. On remand, the district court stayed the case, but not based on primary jurisdiction. Rather, the court explained: "the court agrees that a stay is warranted based on the pendency of two appeals before the Ninth Circuit, *Jones v. ConAgra Foods, Inc.* and *Brazil v. Dole Packaged Foods, LLC*. Both cases involve issues relating to class certification and damages that will apply equally to this case. Notably, plaintiffs do not oppose a stay, and acknowledge that 'changes in the legal landscape could potentially require the parties supplement class certification discovery or briefing that occurred in the interim.'"

20

cases). The doctrine "is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1380 (S.D. Fla. 2014) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). Here, "'[t]his case is far less about science than it is about whether a label is misleading,' and the reasonable-consumer inquiry upon which some of the claims in this case depend is one to which courts are eminently well suited, even well versed." *In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *27 (quoting *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012)). Therefore, "[d]etermining whether a reasonable consumer acting reasonably would find the term 'natural' deceptive when a product contains both natural and synthetic ingredients is a question this Court and Jury are well suited to entertain." *Petrosino*, 2018 U.S. Dist. LEXIS 55818, at *29.

Plaintiff's claims raise the issue of whether Defendant's representations of the Products as "natural" are misleading to the reasonable consumer given that the Products contain multiple synthetic and artificial ingredients. Plaintiff's claims are within the conventional experience of judges. In *Goldemberg*, the court held that courts are well suited to entertain questions regarding whether the use of the term "natural" is deceptive or misleading and explained:

> Determining whether "Active Naturals" misleads consumers into believing that all ingredients in a product are "natural" may involve the Court in a technical consideration of the meaning of "natural" in the context of cosmetics, which is within the FDA's expertise. However, as Plaintiff does not dispute that at least one ingredients in each Aveeno product is arguably natural, the case turns on whether the fact that most of the ingredients are synthetic means using the term "natural" is deceptive.

*Goldemberg*, 8 F. Supp. 3d at 476-77; *see also Garcia*, 43 F. Supp. 3d at 1380 (holding that determination of whether Defendants' "all natural" and "nothing artificial" representations on their products' labeling are misleading "is not a technical area in which the FDA has greater

technical expertise than the courts—as every day courts decide whether conduct is misleading."). The court in *Kind* recognized that because there is a "split among courts and well-reasoned arguments on both sides, this factor does not weigh in favor of the FDA's primary jurisdiction." *In re Kind*, 209 F.Supp.3d 689, 695 (S.D.N.Y. 2016). Similarly, in this case, because courts are well suited to address Plaintiff's claims, this factor weighs against application of the primary jurisdiction doctrine.

### 3. There is not a significant danger of inconsistent rulings.

Defendant argues that "[r]eferral to the FDA for a determination of the terms 'natural' on cosmetic labeling will promote uniformity in the application of federal regulations and consistency in court rulings." (Br. 29.)[6] However, as discussed above in Section III.F.1, the FDA has declined to define the term "natural" in cosmetic and personal care labeling.

Defendant also argues that "permitting individual courts to make individual determinations of what constitutes 'natural' cosmetic products will inevitably lead to conflicting decisions and requirements on a case-by-case and product-by-product basis in both state and federal jurisdictions." (Br. 29.) However, as one court recently held, "[a] risk of substantial danger of inconsistent rulings does not exist because Plaintiff's claims do not require a finding of what 'natural' means. Rather, the claims ask whether a reasonable consumer acting reasonably would be misled by a label displaying the word 'natural' when the product contains synthetic ingredients." *Petrosino*, 2018 U.S. Dist. LEXIS 55818, at *30. Similarly, in this case, Plaintiff's claims ask whether a reasonable consumer acting reasonably would be misled by Defendant's labels when the products contain synthetic ingredients. Because Plaintiff's claims do not require a determination of what "natural" means but rather focus on Defendant's labels, there is not a

---

[6] Defendant cites to *In re Kind*, 209 F.Supp.3d 689, in support of its argument. However, *In re Kind* was a food—not cosmetic—case.

danger of inconsistent rulings and this factor weighs against application of the primary jurisdiction doctrine.

Not citing to any court decisions, Defendant argues that "companies like Olivina will be subject to multiple decisions that point in opposite directions." (Br. 30.) However, even if the FDA were to provide guidance on the use of the term natural in human food labeling, Defendant would be in the same situation. First, as discussed above in Section III.F.1, the FDA has declined to define the term "natural" in cosmetic and personal care labeling. Second, "FDA standards are not determinative of . . . whether the reasonable consumer is likely to be deceived by product packaging." *See* Order re Defendant's Renewed Motion to Stay Case Pending the FDA Action on "Natural" Guidance [Dkt. 262] at 6, *Morales v. Kraft Foods Group, Inc.*, No. 2:14-cv-04387-JAK-PJW (C.D. Cal. Dec. 6, 2016), ECF No. 273 (citing *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 940 (9th Cir. 2008).) Thus, this factor weighs against the application of the primary jurisdiction doctrine.

### 4. The potential delay outweighs the need for the FDA's expertise.

Defendant argues that "[t]he need for the FDA's guidance on this issue outweighs any delay in resolution of the case that may result from a stay." (Br. 31.) However, as discussed above in Section III.F.1, the FDA has declined to define the term "natural" in cosmetic and personal care labeling. Moreover, even if the possible rulemaking regarding the use of the term "natural" in human food labeling addressed Plaintiff's claims, which it unquestionably does not, the likely delay in the process weighs against application of the primary jurisdiction doctrine here.

Although the commissioner of the FDA was recently quoted as saying "[w]e will have more to say on the issue soon"; he did not indicate that the FDA would issue guidance on the use

of the term "natural." Moreover, the FDA issued a call for comments regarding the use of the term "natural" in human food labeling over two years ago and it could take several more to issue any guidance. In fact, the Trump administration's plans to "streamline the FDA" and get rid of many regulations will impede the FDA's ability to issue new rules and regulations. On January 30, 2017, President Trump signed into effect an executive order requiring "federal agencies and departments identify at least two existing federal rules that can be eliminated every time they issue a new regulation."[7] This executive order likely will show down—if not stop—the adoption of new regulations and create a lengthier rulemaking process for the FDA.

Given the fact that any action by the FDA only involves human food labeling and the fact that the FDA has declined to define "natural" in cosmetic and personal care labeling, this factor weighs against application of the primary jurisdiction doctrine.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's motion in its entirety.

Dated: April 12, 2018                    Respectfully Submitted,

                                         /s/Benjamin A. Gastel
                                         James Gerard Stranch, IV
                                         Benjamin A. Gastel
                                         BRANSTETTER, STRANCH &
                                         JENNINGS, PLLC
                                         The Freedom Center
                                         223 Rosa Parks Avenue
                                         Suite 200
                                         Nashville, TN 37203
                                         P: 615-254-8801
                                         F: 615-255-5410
                                         *gerards@bsjfirm.com*
                                         *beng@bsjfirm.com*

---

[7]    *See*    https://www.politico.com/story/2017/01/trump-executive-order-federal-regulations-crackdown-234382 (last visited April 11, 2018).

24

Jason Sultzer
Adam R. Gonnelli
Joseph Lipari
Jeremy Frances
THE SULTZER LAW GROUP, P.C.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
P: 845-483-7100
F: 888-749-7747
*sultzerj@thesultzerlawgroup.com*
*gonnellia@thesultzerlawgroup.com*
*liparij@thesultzerlawgroup.com*
*francisj@thesultzerlawgroup.com*

Melissa S. Weiner
Amy E. Boyle
HALUNEN LAW
80 South Eighth Street
1650 IDS Center
Minneapolis, MN 55402
P: 612-605-4098
F: 612-605-4099
*weiner@halunenlaw.com*
*boyle@halunenlaw.com*

***Attorneys for Plaintiff Patrick Evans***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 12, 2018 the forgoing was served via ECF

processing upon the following:

Jay S. Bowen, TN BPR No. 2649
Lauren E. Kilgore, TN BPR No. 30219
SHACKELFORD BOWEN MCKINLEY &NORTON LLP
47 Music Square East
Nashville, TN 37203
jbowen@shackelfordlaw.net
lkilgore@shackelfordlaw.net

/s/Benjamin A. Gastel_____
Benjamin A.Gastel

26